UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X
Nickie Kane,

                   *Plaintiff*,          **MEMORANDUM AND ORDER**

   -against-                21-CV-4306(KAM)(LB)

Advanced Care Staffing, LLC, Sam Klein,
Wilma Mazano, Jubert Ong, Liz Jurado,
Regina Machado, Jan Romwel Labro,
Gianellie Guerra, Olubunmi Lawal,

                  *Defendants*.

----------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     Presently before the Court is Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim. (ECF No. 67-2.) Plaintiff Nickie Kane ("Plaintiff"), proceeding *pro se*, brings the instant action against Defendants Advanced Care Staffing, LLC, Sam Klein, Wilma Manzano, Jubert Ong, Liz Jurado, Regina Machado, Jan Romwel Labro, Olubunmi Lawal, and Gianellie Guerra (together, "Defendants"). (ECF No. 63, Second Amended Complaint ("SAC").) She alleges violations by Defendants of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin.

Code § 8-101 *et seq.*   (*Id.*)   Plaintiff asserts failure to accommodate her disability, discrimination based on national origin, sex, and religion, and retaliation claims.  (*Id.* at ¶¶ 64-76.)

For the reasons set forth below, Defendants' motion to dismiss is **DENIED** in part **and GRANTED** in part.

<u>**BACKGROUND**</u>

For the purpose of deciding Defendants' motion to dismiss, the Court accepts as true the factual allegations in the SAC, and exhibits attached thereto,[1] and draws all reasonable inferences in Plaintiff's favor.  *See Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint).

## I.   Factual Background

Plaintiff is a transgender woman of Guyanese national origin and the Muslim faith.[2]  (ECF No. 63, SAC at ¶ 15.)  Plaintiff

---

[1] Though Plaintiff appears to have inadvertently failed to attach exhibits to her SAC, the Court will consider the exhibits attached to her original complaint and first amended complaint, given Plaintiff's *pro se* status and the fact that Plaintiff refers in her SAC to the attached exhibits.

[2] In Plaintiff's operative SAC, Plaintiff uses the pronoun "they" as well as the pronoun "she."  (*See* ECF No. 63, SAC at 1, ¶¶ 16, 20, 21-24.)  Given that

alleges that she suffers from post-traumatic stress disorder (PTSD), generalized anxiety, social anxiety, and depression. (*Id.*)

On January 4, 2021, Plaintiff commenced this action against her former employer, Defendant Advanced Care Staffing, LLC ("Advanced Care Staffing"), an employment agency that "hires clinical and non-clinical staff for nursing homes with which the company contracts," and various individuals employed at the company, including Defendant Sam Klein, chief operating officer ("COO"); Defendant Liz Jurado, director of human resources; Defendant Wilma Manzano, human resources manager; Defendant Olubunmi Lawal, an administrative assistant; and Defendants Jubert Ong, Regina Machado, Jan Romwel Labro, and Gianellie Guerra, operations managers.[3] (*Id.* at ¶¶ 3-11; ECF No. 67-2, Memorandum of Law in Support of Defendants' Motion to Dismiss, ("Def. Mem.") at 4-5.)

Plaintiff alleges that she began working at Advanced Care Staffing on April 29, 2019, as an "HR Partner" in the human resources department. (ECF No. 63, SAC at ¶¶ 16, 18.) She was hired subject to a 90-day probationary period. (*Id.* at ¶ 18.)

---

Plaintiff predominately uses the pronoun "she" in the SAC, this Court will use "she/her" pronouns to refer to Plaintiff, where necessary.

[3] In the initial complaint, Luz Lozano, Kashiera Franklyn, and Ola Abudu were also included as defendants, but they were eliminated as defendants from Plaintiff's amended complaints. (*See* ECF No. 63, SAC at ¶¶ 3-11.)

Plaintiff alleges that she was one of two HR Partners at Advanced Care Staffing, and that the other HR Partner was a "black female of Caribbean ancestry, who practiced the Christian faith." (*Id.* at ¶ 19; ECF No. 67-2, Def. Mem. at 5.) One of Plaintiff's primary responsibilities was to process paperwork for new hires submitted by the company's operations managers. (ECF No. 63, SAC at ¶ 20.)

### A. National Origin Discrimination

During her time at Advanced Care Staffing, Plaintiff alleges that she processed new hires for three operations managers at Advanced Care Staffing: Defendants Machado, Guerra, and Ong. Plaintiff alleges that all three operations managers were of Filipino origin. (ECF No. 63, SAC at ¶ 21.) Plaintiff does not allege that the three operations managers had supervisory authority over her or had the authority to exercise decision-marking regarding her terms and conditions of employment. On her first day of processing new hire submissions, Plaintiff alleges that she was "verbally accosted" by Machado. (*Id.* at ¶ 20.) Plaintiff alleges that Machado subsequently reported Plaintiff to Defendant Manzano, the human resources manager. (*Id.*) Manzano subsequently assigned Plaintiff to a different operations manager, Defendant Guerra. (*Id.* at ¶ 21.)

Approximately one month later, Plaintiff had a "heated email exchange" with Guerra, who allegedly had requested that Plaintiff make "special accommodations" for Guerra's work. (*Id.* at ¶ 22.)

Plaintiff refused, and Guerra allegedly followed up with a phone call where she "screamed at Plaintiff." (*Id.*) During the conversation, Plaintiff hung up the phone. Plaintiff alleges that Guerra alerted Defendant Klein, Advanced Care Staffing's COO, to this incident, and complained about Plaintiff's "rude" conduct. (*Id.*) Plaintiff alleges that she explained to Klein that she hung up because Guerra was "verbally abusive." (*Id.*)

On July 10, 2019, Plaintiff was reassigned again to Defendant Ong, the third operations manager. (*Id.* at ¶ 27.) Plaintiff alleges that a similar pattern of behavior emerged, and that Ong verbally berated Plaintiff. (*Id.*)

Concerning the above alleged harassment, Plaintiff states that the operation managers "never berated" nor "acted aggressively" with the other HR Partner, who was not of Guyanese national origin. (*Id.* at ¶¶ 35, 56.) Plaintiff further alleges that Manzano "gave Plaintiff more and more responsibilities" but "failed to delegate more work to the other HR partner." (*Id.* at ¶ 33.) Plaintiff additionally alleges that one of the other two Guyanese women at the company was a former HR Partner who was terminated shortly after Plaintiff finished training for the role. (*Id.* at ¶ 56.) She also alleges that she was "one of three females of Guyanese national origin" at Advanced Care Staffing, and that she witnessed Ong "berate [] and harass []" the third Guyanese woman, who was employed in the payroll department. (*Id.* at ¶ 58.)

Plaintiff finally alleges that "within a short period, all of the Guyanese employees including Plaintiff were terminated or resigned due to harassment." (*Id.*)

### B. Failure to Accommodate Plaintiff's Disabilities

Plaintiff alleges that she disclosed her mental health conditions — including PTSD, generalized anxiety, social anxiety, and depression — to Manzano, the human resources manager, after employees from a company on the same office floor as Advanced Care Staffing complained to Manzano about Plaintiff's aloof disposition. (*Id.* at ¶ 23.) She notified Manzano that her mental health conditions made "social situations difficult for her," and specifically that her social anxiety made "prolonged eye contact, group interactions, and meeting new people very triggering." (*Id.* at ¶ 24.) Plaintiff does not allege facts regarding any medical diagnosis of her mental health condition. Plaintiff alleges that Manzano did not alert other staff about Plaintiff's conditions, but continued to tell Plaintiff about complaints that Manzano received regarding Plaintiff's disposition. (*Id.*) Plaintiff also alleges that Manzano stated, on several occasions, that Plaintiff was "too shy." (*Id.*)

Plaintiff additionally alleges that she asked to be relocated from her desk in a "high-traffic area" to a desk that was in a quieter part of the office, as "idle cit [sic] chat and small talk" activated her social anxiety. (*Id.* at ¶ 25.) Manzano refused to

allow Plaintiff to move, and instead requested that Plaintiff sit in front of her. (*Id.*)

Plaintiff further alleges that she was asked to "sit two to three times a week at the front desk for at most half an hour," a responsibility that was outside her scope of work as an HR Partner. (*Id.* at ¶ 26.)  She does not allege whether the only other HR Partner was also required to sit at the front desk.  On June 20, 2019, Plaintiff alleges that she was at the front desk when Defendant Labro walked over and "threw a stack of papers at [her]." (*Id.*)  Shortly after, Defendant Lawal asked Plaintiff for paperwork with which Plaintiff was unfamiliar; when Plaintiff could not produce the paperwork, Plaintiff alleges that Lawal "walked off in a fury." (*Id.* at ¶ 37.)  After Labro and Lawal went to Klein and complained that "Plaintiff was rude and not doing things correctly," Klein and Manzano scheduled a meeting among Plaintiff, Labro, and Lawal. (*Id.* at ¶ 38.)

At the meeting, Plaintiff alleges that Lawal and Labro "took turns yelling" at the Plaintiff. (*Id.* at ¶ 39.)  Plaintiff alleges that she told Manzano during the meeting that the yelling was "triggering her PTSD" and requested to leave the room, but Manzano refused her request. (*Id.*)  Plaintiff also asked whether Klein could review the office cameras to confirm whether Labro threw the papers at Plaintiff, but Klein refused to do so. (*Id.* at ¶ 40.)

**C.  Sex Discrimination**

Plaintiff alleges that in June 2019, Ong openly discussed Plaintiff's body with co-workers, saying that Plaintiff "sometimes had breasts and sometimes didn't." (*Id.* at ¶ 28.) That same month, Ong stood over Plaintiff and "looked down her T-shirt as she sat working." (*Id.*)

Plaintiff also contends that Klein sexually harassed her. She alleges that in June 2019, Klein stood so close to her that "his crotch was inches away from her face"; he then "looked down at her and bit his lower lip." (*Id.* at ¶ 29.) Later that month, after Plaintiff returned from a day off, she alleges that Klein approached her and said, "I missed you yesterday" in a "low sad sounding voice without making eye contact." (*Id.* at ¶ 30.) In July 2019, Plaintiff alleges that she turned around at work to find Klein's eyes "fixed at the level where Plaintiff's crotch/rear end would be," with a "grin on his face." (*Id.* at ¶ 45.) Plaintiff "realized [that] he was staring at her rear before she turned around." (*Id.*)

Plaintiff alleges that the work environment "was causing her panic attacks and affecting her health," and that her symptoms worsened to such an extent that a psychiatrist prescribed her medication for panic attacks. (*Id.* at ¶ 31.)

### D. Religious Discrimination

Plaintiff also alleges that Advanced Care Staffing failed to accommodate her dietary restrictions as a Muslim. Per her Muslim

faith, Plaintiff does not eat pork; she alleges that at office parties, only Filipino food was served, which always contained pork. (*Id.* at ¶ 61.)  She also alleges that for Jewish employees, the company "made sure [the food] was Kosher." (*Id.*)

Further, Plaintiff argues that Jewish employees were favored with respect to holidays.  Plaintiff alleges that Advanced Care Staffing employees were provided only one "floating holiday," which could only be used on "one of two Jewish holidays." (*Id.* at ¶ 62.)  She also alleges that the company's Jewish employees were allowed to leave work early on Fridays. (*Id.*)

### E. Retaliation

Plaintiff alleges that she suffered retaliation after she refused repeated requests of Advanced Care Staffing's operations managers that she violate company policies and procedures, and that they "expected and demanded the rules be bent for them." (*Id.* at ¶¶ 20-22, 42-43, 72-76.)  She alleges that Defendant Machado provided incomplete new hire submissions but then "demanded . . . new hires be accepted"; after Plaintiff refused to do so, Defendant Manzano told Plaintiff that she "ha[d] to be a team player." (*Id.* at ¶ 20.)  Plaintiff allegedly was "screamed at" by the operation managers, who "lashed out when she would not bend the rules," and Plaintiff was left "to enforce the [new hire] policy alone." (*Id.* at ¶ 21.)  Plaintiff also refused to "process applications that had not been signed by . . . applicants but rather had a typed-in

signature with a script font," which Defendants Manzano and Jurado refused to acknowledge was wrong.  (*Id.* at ¶¶ 42-43.)

Plaintiff alleges that on July 16, 2019, Defendant Klein retaliated against her for refusing to bend rules and violate company policy, and terminated her employment, but that Klein stated only that "things [were] not working out" and that she "did nothing wrong." (*Id.* at ¶ 46.)  Klein allegedly offered Plaintiff three weeks' pay if she resigned; in a follow-up email to Klein, on July 17, 2019, Plaintiff refused to resign, and instead raised complaints that she had been discriminated against.  (*Id.* at ¶¶ 47-48.)  Plaintiff alleges that Klein subsequently refused to communicate with her and directed her to speak with Advanced Care Staffing's counsel. (*Id.* at ¶ 49.)

Plaintiff alleges that after her termination by Advanced Care Staffing, as part of her job search, she applied to Shema Kolainu, a school in Brooklyn.  (*Id.* at ¶ 50.)  She alleges that the application asked for a prior employment verification form, but that Advanced Care Staffing — through counsel — refused to provide a letter "stating her hire date, end date, and position." (*Id.* at ¶ 51.)  Finally, Plaintiff alleges that she did not receive a paystub for her last payment from Advanced Care Staffing. (*Id.* at ¶ 52.)  Because she did not have proof of her final earnings, she alleges that she was unable to file for unemployment benefits. (*Id.*)

Based on the above allegations, the Court construes the SAC to assert claims of discrimination based on national origin, sex, and religion, hostile work environment, disability and denial of reasonable accommodation, and retaliation.

## II.  Procedural History

### A. State and EEOC Administrative Proceedings

On August 27, 2019, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race/ethnicity, national origin, religion, gender identity, and sex.[4]  (*Id.* at ¶ 53; ECF No. 67-1, Certification of Jacqueline Voronov with Exhibits at 5-10.)  Plaintiff also alleged retaliation "for having opposed her employer's discriminatory conduct."  (ECF No. 63 at ¶ 53.) The NYSDHR made a finding of "no probable cause" because, *inter alia*, Defendants stated that Plaintiff had been terminated for poor performance and insubordinate behavior; Plaintiff's corroborating witness did not appear for an NYSDHR interview despite multiple attempts at contact; Plaintiff appeared to have conflicts with multiple employees, regardless of protected class,

---

[4] Defendants attached Plaintiff's NYSDHR complaint and NYSDHR's finding to their motion to dismiss.  (ECF No. 67-1.)  The Court finds that these documents are incorporated into the complaint by reference by Plaintiff, and thus the Court may consider them when deciding Defendants' motion to dismiss.  *See Nicosia*, 834 F.3d at 230-31 (courts may consider on a motion to dismiss "any statements or documents incorporated in [the complaint] by reference").

including calling a Black gay employee a "princess"; and NYSDHR presumes that discrimination is absent where, as here, an employee is hired and fired within a short period of time by the same superior, absent other evidence to the contrary, and Plaintiff was fired after working as a probationary employee for less than three months. (ECF No. 67-1 at 12-14.) On September 29, 2020, the EEOC adopted the NYSDHR's determination and issued Plaintiff notice of her right to sue, which she received on October 4, 2020. (*Id.* at 55; ECF No. 63 at ¶ 53.)

### B. Instant Action

Plaintiff filed her initial complaint in the Southern District of New York on January 4, 2021, against Advanced Care Staffing, Kashieria Franklyn, "Gia Guerra," Liz Jurado, Sam Klein, Jan Romwel Labro, Luz Lozano, Regina Machadoa, Wilma Manzano, "Ola Doe," and Jubert Ong. (ECF No. 1.) The U.S. Marshals executed service of the summons and complaint on the named defendants on March 15, 2021. (ECF Nos. 17-20, Marshal's Process Receipt and Return of Service Executed.) On August 2, 2021, venue was transferred to the Eastern District of New York, as Advanced Care Staffing is located in Brooklyn, New York. (ECF No. 36 at 1; 38.) The action was assigned to the undersigned on December 8, 2021. (12/08/2021 Order.)

After a pre-motion conference on February 8, 2022, during which the Court explained the bases of Defendants' proposed motion

to dismiss, the parties engaged in settlement negotiations and attempted mediation, both of which were unsuccessful. (02/08/2022 Minute Entry; ECF Nos. 50, 52, 60; 06/21/2022 Report.) Plaintiff was granted leave to and did file an amended complaint on April 29, 2022, withdrawing three defendants and naming "Olubunmi Lawal" as a defendant. (ECF No. 58, Amended Complaint.) At Defendants' request, the Court held a second pre-motion conference on August 3, 2022, at which the Court granted Plaintiff a final opportunity to amend. (08/03/2022 Minute Entry.) Plaintiff filed the SAC on September 2, 2022, naming the same defendants as the amended complaint. (ECF No. 63.) Defendants moved to dismiss Plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process on Defendant Lawal, and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 67.) The motion to dismiss was fully briefed on November 28, 2022.[5] (*Id.*)

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[5] Defendants requested oral argument, due to the "numerous factual and legal issues presented" in Plaintiff's SAC. (ECF No. 68.) Given the extensive briefing and Defendants' presentation of the "numerous factual and legal issues" in their motion papers, the Court declines to hold oral argument.

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).]

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks, italics, and citations omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (italics omitted) (internal quotation marks omitted).

<u>**DISCUSSION**</u>

**I.   Insufficient Service of Process**

Defendants first argue that Plaintiff's claims against Defendant Lawal must be dismissed for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). (Def. Mem. at 18.) They assert that Defendant Lawal was never

served with the summons and complaint after he was added as a party in Plaintiff's first and second amended complaints.  (*Id.*)

Under Federal Rule of Civil Procedure 4, a plaintiff must serve the summons and complaint on a defendant within ninety days of filing a complaint.  Fed. R. Civ. P. 4(c)(1), (m).  Rule 4(m) provides that the Court, upon plaintiff's failure to timely serve a defendant, shall either "dismiss the action without prejudice" or "order that service be made within a specified time."  Any pleadings "filed after the original complaint" must be served on every party.  Fed. R. Civ. P. 5(a)(1)(B).  The Second Circuit has stated that when district courts consider whether to dismiss a complaint for failure to properly serve, *pro se* plaintiffs "should be granted special leniency."  *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001); *see also Thrall v. Cent. New York Reg'l Transp. Auth.*, 399 F. App'x 663, 666 (2d Cir. 2010) (citations omitted).

Here, the docket reflects that Plaintiff failed to serve Defendant Lawal.  (*See* ECF No. 7.)  After the Southern District of New York granted Plaintiff's motion to proceed *in forma pauperis* on February 3, 2021, the U.S. Marshals served the summons and complaint on then-defendants Gianellie Guerra, Jan Romwel Labro, Liz Jurado, Luz Lozano, Wilma Manzano, Regina Machado, Kashieria Franklyn, Sam Klein, Jubert Ong, Ola Abudu, and Advanced Care Staffing.  (ECF Nos. 10-20.)  After the case was transferred to

15

this Court on July 26, 2021, Plaintiff filed an amended complaint on April 29, 2022, removing as defendants Kashieria Franklyn, Luz Lozano and Ola Abudu and adding Olubunmi Lawal as a defendant. (ECF No. 58, Amended Compl.)  The docket does not show service of the summons and amended complaint on Defendant Lawal.  On September 2, 2022, Plaintiff filed a second amended complaint against Defendants, including Defendant Lawal, but the docket again does not reflect service of the second amended complaint on Defendant Lawal.  (ECF No. 63.)

Ordinarily, where a party has not been served with a summons and complaint, this Court must dismiss the complaint without prejudice.  The Court, however, "must extend the time for service for an appropriate period" if a plaintiff demonstrates "good cause" for failure to effect service within 90 days.  Fed. R. Civ. P. 4(m).  Additionally, the Court "has discretion to enlarge the [90-day] period for service in the absence of good cause."  *Green v. Unwin*, 563 F. App'x 7, 8 (2d Cir. 2014) (summary order).

Here, Plaintiff is *pro se*, and thus is granted special leniency regarding service, although "a plaintiff's *pro se* status . . . does not automatically amount to good cause for failure to serve in the allotted time."  *Allore v. Specialized Loan Servicing, LLC*, 17-cv-3729(AMD)(VMS), 2018 WL 2048368, at *1 (E.D.N.Y. May 1, 2018) (citation omitted).  The Court particularly notes that service of the original complaint was carried out by the U.S.

Marshals, given Plaintiff's IFP status.  (ECF Nos. 10-20.)  More importantly, however, Defendant Lawal has had notice that Plaintiff's amended complaint and second amended complaint named him as a defendant.  Defendant Lawal is represented by the same counsel as the eight other defendants in the instant action, and counsel filed a second pre-motion conference request on behalf of *all* Defendants, including Lawal, after Lawal was named in Plaintiff's amended complaint.  (ECF Nos. 58, 61.)  Accordingly, the Court finds that the likelihood of prejudice against Lawal for Plaintiff's failure to serve is low.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claims against Lawal pursuant to Rule 12(b)(5) for insufficient service of process.  As discussed in detail below, given that this Court finds that the SAC fails to state any claims against Defendant Lawal, the Court does not extend the timeline for service.

## II.  Threshold Issues

### a.  Timeliness

"Before a plaintiff may assert claims under Title VII . . . in federal court, [she] must present the claims forming the basis of such a suit in a complaint to the EEOC."  *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015)).  The same is true of claims pursuant to the ADA. *See Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 258 (S.D.N.Y. 2015).

A claim under each of these statutes is time barred if the plaintiff does not file a charge with the EEOC "within 180 days of the alleged illegal discriminatory or retaliatory act or file[ ] a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged illegal act." *Cruz v. City of New York*, No. 21-cv-1999(DLC), 2021 WL 5605139, at *4 (S.D.N.Y. Nov. 30, 2021) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA)).

Here, Plaintiff alleges that the alleged discriminatory and retaliatory acts occurred between April 2019 and July 2019. Plaintiff filed a charge of discrimination with NYSDHR on August 27, 2019, well within the 300-day period provided by federal law. (ECF No. 67-1 at 5-10). Accordingly, because the NYSDHR charge was cross-filed with the EEOC, Plaintiff's claims were timely filed before the EEOC.

### b. Administrative Exhaustion

"Under Title VII, a complainant must 'exhaust' her administrative remedies by filing a complaint with the EEOC or an authorized state agency prior to the commencement of a Title VII action in federal court, and that complaint must name the defendant."[6] *Belyea v. City of Glen Cove*, No. 20-CV-5675 (MKB),

---

[6] The United States Supreme Court held in *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843 (2019), that Title VII's administrative exhaustion requirement is not a jurisdictional prerequisite and can be waived if not timely asserted. Here, no waiver issues are present with respect to administrative exhaustion

2022 WL 3586559, at *9 (E.D.N.Y. Aug. 22, 2022) (citing *Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) (summary order)).  Claims not raised in an EEOC complaint, however, "may be brought in federal court if they are reasonably related to the claim filed with the agency." *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 n.5 (2d Cir. 2018) (en banc) (internal quotation marks and citation omitted).

"Reasonably related" claims are recognized in three situations: where (1) the alleged discriminatory conduct "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge"; and (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citations omitted); *see also Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009) (summary order).  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (citation omitted).

---

because Defendants asserted lack of exhaustion as a basis for dismissal. (*See* ECF No. 67-2, Def. Mem. at 17–19.)

Defendants correctly assert that Plaintiff (1) failed to name Defendant Lawal and (2) did not identify disability as a basis for discrimination in the NYSDHR complaint.  (ECF No. 67-2, Def. Mem. at 18.)  Defendants therefore argue that all claims against Lawal must be dismissed and that Plaintiff's ADA claim must be dismissed. Plaintiff counters that Lawal was the party identified as "Ola Doe," whose name was on the NYSDHR complaint.  (ECF No. 67-3, Plaintiff's Opposition ("Pl. Opp.") at 3.)  She also concedes that she did not check the disability box on the NYSDHR complaint, but asserts that she raised allegations related to disability discrimination in the NYSDHR complaint.  (*Id.* at 2.)

Regarding Defendant Lawal, this Court assumes without finding that "Ola Doe" was intended to be Lawal, and declines to dismiss Plaintiff's claims against Lawal for lack of administrative exhaustion.

Regarding Plaintiff's ADA claim, this Court agrees with Defendants that Plaintiff failed to exhaust her claim.  There is no dispute that Plaintiff failed to check the "disability" box in her NYSDHR complaint, which was cross-filed with the EEOC.  (*See* ECF No. 67-3, Pl. Opp. at 6 ("The Plaintiff raised disability discrimination in her New York State Division of Human Rights Pleadings despite not checking the disability box.")  Although checking the box indicating the type of alleged discrimination on an administrative claim form is not conclusive, "the absence of a

checkmark weighs against concluding that the plaintiff has alleged discrimination on the basis of the claim designated by that box." *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 174 (E.D.N.Y. 2017). Further, although Plaintiff asserts in her opposition that she included allegations related to disability discrimination in her NYSDHR complaint, that complaint states only the following allegations:

> I was repeatedly harassed[sic] by phillopino[sic] staff. I was treaeted[sic] less favorably than phillopino staff. I was sexually harassed by management and staff. I was asked to do unlawful acts by management. I was asked to work without overtime. I was given excessive duties compared to my colluege[sic]. I was denied employment verification. False complaints were filed against me.

(ECF No. 67-1 at 9.) None of these allegations directly mention or provide notice of disability discrimination or failure to accommodate.

Nor are these allegations "reasonably related" to conduct that could constitute discrimination on the basis of disability. *See Ximines*, 516 F.3d at 158 ("The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases."). Although Plaintiff's allegations in the NYSDHR complaint may be liberally construed as asserting national origin, race, and sex discrimination and retaliation claims, the allegations do not – even liberally construed – support a disability claim. Further, the NYSDHR's

three-page finding of "no probable cause" described in detail the agency's investigation, including reviewing Plaintiff's written rebuttal, conducting an interview with Plaintiff, and attempting to speak to Plaintiff's witnesses, and does not mention alleged disability discrimination. (ECF No. 67-1 at 12-14.) Specifically, the NYSDHR's three-page finding never mentions that Plaintiff has a disability, nor that Plaintiff believes that she was discriminated against based on a disability. (*Id.*) The Court therefore finds that Plaintiff's ADA claims were not raised in the administrative proceeding, are not reasonably related to her national origin, race, sex, gender identity, and religious discrimination and retaliation claims that were raised in the administrative proceeding, and are barred in this action. Accordingly, Plaintiff's ADA claims are dismissed.

### III. Failure to State a Claim

#### a. Discrimination under Title VII

As a preliminary matter, "Title VII does not impose liability on individuals." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012); *see also Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII."). Accordingly, the Court dismisses Plaintiff's Title VII discrimination and retaliation claims against individual Defendants Klein, Manzano, Ong, Jurado, Labro, Guerra, and Lawal.

As for Plaintiff's remaining Title VII claims against Advanced Care Staffing, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, "absent direct evidence of discrimination," a plaintiff must plausibly allege that he or she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Therefore, in an employment discrimination case, a plaintiff must plausibly allege that: "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

The parties do not dispute that Plaintiff is a member of a protected class (or multiple protected classes). (ECF No. 67-2, Def. Mem. at 22 ("Defendants will not dispute, for purposes of this Motion, that Plaintiff belongs to various protected classes."). Defendants, however, dispute that Plaintiff was qualified for her position, that she suffered an adverse employment

action, and that a plausible inference of discriminatory intent has been adequately pleaded.  (*Id.*)  Plaintiff alleges that she had two prior positions as a human resources assistant, which this Court assumes, without determining, suffices to make her qualified for the HR Partner position for which Advanced Care Staffing hired her.  (ECF No. 63 at ¶ 19.)  Additionally, Plaintiff clearly suffered an adverse action when she was terminated from Advanced Care Staffing.  *See Buon v. Spindler*, 65 F.4th 64, 80 (2d Cir. 2023) ("[I]t is also well settled that 'firing' . . . constitute[s] adverse employment action[].").

Therefore, at issue is only the fourth *Littlejohn* element — requiring that the facts alleged provide "at least minimal support for the proposition that the [adverse action of the] employer was motivated by discriminatory intent."  795 F.3d at 311 ("The facts required by *Iqbal* . . . need only give plausible support to a minimal inference of discriminatory motivation.")  A plaintiff can support such an inference by (a) "demonstrating that similarly situated employees of a different race or national origin [or religion or sex/gender] were treated more favorably," (b) "showing that there were remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," or (c) "proving that there were other circumstances giving rise to an inference of discrimination on the basis of [the] plaintiff's race or national origin [or religion or sex/gender]."  *Nguyen v. Dep't of Corr. and*

*Cmty. Serv.*, 169 F. Supp. 3d 375, 388 (S.D.N.Y. Mar. 11, 2016) (citing *Gelin v. Geithner*, No. 06-cv-10176, 2009 WL 804144, at *15 (S.D.N.Y. Mar. 26, 2009) (citations and internal quotation marks omitted), *aff'd*, 376 F. App'x 127 (2d Cir. 2010)).

Here, Plaintiff has not plausibly alleged factual circumstances giving rise to an inference that illegal discrimination was, in part, a motivating factor in her termination.

### i. National Origin

Plaintiff alleges that three Filipino managers verbally harassed and berated her, a Guyanese woman. (ECF No. 63 at ¶ 20-22, 27, 35, 56.)  For example, Defendant Machado allegedly stated that Plaintiff "didn't know what they were doing" and Defendant Ong told Plaintiff that she "didn't know what she was doing" and "needed to be trained." (*Id.* at ¶¶ 20, 27.)  Plaintiff, however, does not allege any specific remarks by the operations managers showing discriminatory animus towards Guyanese employees, such as remarks disparaging Plaintiff's place of national origin or offensive remarks or slurs based on her national origin. (*Id.* at ¶¶ 20, 22.)  Absent factual allegations of discriminatory acts bearing on Plaintiff's Guyanese national origin, Plaintiff's interactions with the operations managers, even if deeply unpleasant, do not rise to the level of discriminatory animus. *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 513 (S.D.N.Y.

2010) ("Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces.").

Plaintiff also alleges that the only other HR partner, a "black female of Caribbean ancestry," was treated more favorably by the same Filipino managers than Plaintiff, and was "never berated" by the Filipino managers. (*Id.* at ¶¶ 19, 35, 56.) "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group—is a recognized method of raising an inference of discrimination." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20 (2d Cir. 2013) (summary order) (citation omitted). To do so, the other employee must be "similarly situated to the plaintiff in all material respects." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (internal quotation marks omitted).

Here, however, Plaintiff alleges that she was newly hired and on a 90-day probationary period for the HR Partner role. (ECF No. 63 at 18.) Plaintiff does not allege that the non-Guyanese HR Partner was also newly hired or on a probationary period. Probationary and permanent employees often are not similarly situated for purposes of Title VII claims. *Cf. Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that plaintiff as a probationary employee was not similarly situated to the other employees regarding conditions under which he could be terminated,

26

although where evidence showed members of one race "were not
disciplined *at all*" for conduct at issue, discriminatory motive
could be inferred); *Woods v. Newburgh Enlarged City Sch. Dist.*,
288 F. App'x 757, 760 (2d Cir. 2008) (summary order) (probationary
and permanent employees not similarly situated).   Plaintiff
therefore has not plausibly alleged facts to support an inference
of discriminatory treatment and motivation based on national
origin, with regard to the dissimilarly situated comparator.

Finally, Plaintiff alleges that, including herself, there
were three Guyanese women on staff at Advanced Care Staffing,
another of whom was told that she "doesn't know what she is doing"
and all of whom were terminated or resigned "within a short
period."   (ECF No. 63 at ¶¶ 56, 58.)   Yet Plaintiff simply does
not provide sufficient factual allegations regarding the other
Guyanese women to plead "circumstances giving rise to an inference
of discrimination on the basis of . . . national origin."   *Nguyen*,
169 F. Supp. 3d at 388.   Accordingly, Plaintiff's Title VII claims
of national origin discrimination are dismissed.

j. Religion

Plaintiff alleges that, as a Muslim, she does not eat pork.
(ECF No. 63 at ¶ 61.)   She further alleges, in apparent
contradictory fashion, that food provided at Advanced Care
Staffing's "office parties" always contained pork, but that the
company made sure that any food "provided for Jewish employees"

27

was kosher.  (*Id.*)  Plaintiff does not allege that she could not or would not eat kosher food offered at the office parties.  She also alleges that employees were offered two "floating holiday[s]" but were required to use those days "on one of two Jewish holidays." (*Id.* at 62.)  She further alleges that Jewish employees were "allowed to go home early on Fridays." (*Id.*)  Plaintiff does not allege that she ever requested to use "floating holidays" to observe a religious holiday.

Under Title VII, employees may assert two different theories of religious discrimination: disparate treatment and failure to accommodate*. Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 (S.D.N.Y. 2021); *see generally Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130 (2d Cir. 2003).  To plausibly state a disparate treatment claim, Plaintiff must allege, *inter alia*, that she "suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of . . . religion." *Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022).  None of the allegations in the SAC give rise to an inference that Plaintiff's termination was based on religion, nor does Plaintiff allege any other adverse employment action that is related to her allegations concerning her Muslim faith.

Plaintiff's allegations similarly fall short of stating a failure to accommodate claim.  The Supreme Court has held that an employer need not have "actual knowledge" of an employee's need

for a religious accommodation to be held liable under Title VII for an employment decision. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772-73 (2015). Nevertheless, an employee must establish that "the employer's desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision." *Id.* at 773-74. None of Plaintiff's factual allegations explain how her religious beliefs may have impacted Advanced Care Staffing's decision to terminate her employment, or any other adverse employment action. Accordingly, Plaintiff's Title VII claim of religious discrimination is dismissed.

### b. Sex Discrimination and Hostile Work Environment under Title VII

Plaintiff additionally alleges that Defendants Ong and Klein sexually harassed her. Because Title VII "indirectly prohibits sexual harassment on the basis that harassment can be a form of sex discrimination when it leads to a hostile environment," and because Plaintiff is *pro se*, the Court liberally construes the SAC as attempting to assert a hostile work environment claim. *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018).

"A hostile work environment claim requires a plaintiff to show that his or her workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or] her employment were thereby altered." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir.

2020) (internal quotation marks and citation omitted).  The Court must assess objective and subjective elements: "the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."   *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Factors relevant to whether a workplace is objectively hostile include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, No. 22-808, 2023 WL 2469824, at *3 (2d Cir. Mar. 13, 2023) (summary order) (alteration, internal quotation marks, and citation omitted).  It is "axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (internal quotation marks and citation omitted).  There also must be a "specific basis for imputing the conduct creating the hostile work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009).

Here, in support of her claim that she suffered a hostile work environment, Plaintiff alleges that (1) Ong stated that Plaintiff "sometimes had breasts and sometimes didn't" in front of

coworkers; (2) Ong "looked down her T-shirt" while she worked; (3) Klein "stood so close to Plaintiff as she sat working" that his "crotch was inches away from her face" and he "bit his lower lip"; (4) Klein stated "I missed you yesterday" to Plaintiff in a low voice after she took a day off; and (5) Klein once stared at "the level where Plaintiff's crotch/rear end would be." (*Id.* at ¶¶ 28-30, 45.)

Assuming Plaintiff's allegations to be true, as the Court must at the motion to dismiss stage of the proceedings, the Court finds that this offensive, humiliating, and highly inappropriate conduct establishes "an objectively hostile or abusive work environment." *Agosto*, 982 F.3d at 101. First, other than Klein's alleged comment that he "missed" Plaintiff on her day off, the alleged discriminatory conduct all explicitly invoked Plaintiff's sex and/or gender identity. *See Olsen v. Suffolk Cnty.*, No. 15-CV-4064(JS)(AYS), 2016 WL 5395846, at *11 (E.D.N.Y. Sept. 27, 2016) ("[T]he overtly sexual nature of [Defendant's] conduct leaves no question that such action took place because of Plaintiff's gender."). And given the context of Klein's comment — that he also had placed his "crotch . . . inches away from [Plaintiff's] face" and stared at her "crotch/rear end" — the Court finds that Plaintiff has sufficiently alleged that the harassment occurred based on the protected characteristic of Plaintiff's sex and/or gender identity. (ECF No. 63 at ¶¶ 28-30, 45); *see Moll v.*

31

*Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) ("Facially [sex-]neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.").

Additionally, the Court finds that the alleged discriminatory conduct was frequent and "severely permeated" Plaintiff's workplace during her time as an employee. *Agosto*, 982 F.3d at 101. Courts have determined that discriminatory conduct "persist[ing] on a weekly basis over an interval that lasted at least two and perhaps three months" may establish a pervasively hostile work environment. *Desardouin*, 708 F.3d at 106. Although Plaintiff only worked at Advanced Care Staffing for 78 days, she alleges five separate incidents in which she faced humiliating "discriminatory intimidation, ridicule, and insult." *Agosto*, 982 F.3d at 101. Such frequent conduct is "more than episodic" and becomes "sufficiently continuous and concerted . . . to be deemed pervasive." *Id.* at 102 (quoting *Desardouin*, 708 F.3d at 105). Further, though not physically threatening, the alleged discriminatory conduct was more than merely offensive, particularly given that Defendants Ong and Klein both commented on and interacted with Plaintiff's body in a sexual manner, with Ong "look[ing] down her T-shirt" and with Klein placing his "crotch . . . inches away from her face" as he "bit his lower lip." (ECF

32

No. 63 at ¶¶ 28-30, 45).  Plaintiff's allegations concerning the humiliating nature of the conduct, and its frequency, therefore sufficiently establish altered working conditions.  *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) ("[A] plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.").

Finally, Plaintiff sufficiently alleges that Advanced Care Staffing had notice of the hostile work environment and failed to take remedial action.  To establish that Advanced Care Staffing failed to take appropriate action, Plaintiff must demonstrate: "(1) *someone* had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable."  *Duch*, 588 F.3d at 763.  Further, "[t]he employer is charged with actual or constructive knowledge of harassment where: (1) the official's status in the management hierarchy qualifies him as a 'proxy' for the company, (2) the official has 'a duty to act on the knowledge and stop the harassment,' or (3) the official has a 'duty to inform the company of the harassment.'"  *Olsen*, 2016 WL 5395846, at *11 (quoting *Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997) (citations omitted)).  Although Plaintiff does not make any allegations that

33

she reported Defendant Ong's conduct, Defendant Klein — who allegedly performed most of the discriminatory harassment — is the COO of Advanced Care Staffing, thus qualifying him as a "proxy." *Torres*, 116 F.3d 636.   Accordingly, notice may be imputed to Advanced Care Staffing of the alleged discriminatory harassment, based on sex, against Plaintiff.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's Title VII hostile work environment claims based on sex discrimination.[7]

### c. Retaliation under Title VII

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII.   42 U.S.C. § 2000e-3(a).   Claims of retaliation are analyzed under the *McDonnell Douglas* burden shifting analysis.   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   At the pleading stage, "the allegations in the complaint need only give plausible support to the reduced prima facie

---

[7] Although Plaintiff did not raise a hostile work environment claim based on national origin or her religion, this Court notes that Plaintiff's allegations fail to establish a national origin or religion-based hostile work environment claim.   As noted previously, none of Plaintiff's allegations concerning her interactions with the Filipino operations managers indicate discriminatory animus on the basis of Plaintiff's Guyanese national origin, nor does she otherwise allege discriminatory animus on the basis of her Muslim faith.   (ECF No. 63 at ¶¶ 20, 22, 62.)   Accordingly, Plaintiff does not sufficiently allege that "her workplace was so severely permeated with discriminatory intimidation, ridicule, and insults" as to create a hostile work environment based on her national origin or religion classifications.   *Agosto*, 982 F.3d at 101.

requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316.

To plead a prima facie retaliation claim, the Second Circuit has recently reiterated that a plaintiff must allege: "(1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, No. 22-cv-792, 2023 WL 5005655, at *5 (2d Cir. Aug. 7, 2023).

Here, Plaintiff alleges that in performing her duties, she refused to agree to other employees' requests that were "in violation of company policies and established procedures," for which she was terminated, and that Advanced Care Staffing subsequently refused to give Plaintiff an employment verification letter or a copy of her last paystub. (ECF No. 63 at ¶¶ 72-76.) Plaintiff's allegation that she "would not bend the rules" for other employees regarding internal human resources protocol does not constitute protected activity under Title VII. "Protected activity includes opposition to a discriminatory employment practice or participation in any investigation, proceeding, or hearing under Title VII." *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680-81 (2d Cir. 2009) (summary order) (internal

quotation marks omitted).  Because Plaintiff's refusal to change human resources practices was not done in opposition to a discriminatory employment action, it does not constitute protected activity.  *See id.*  Therefore, because this Court finds that Plaintiff's refusal to change human resources practices does not constitute protected activity, Plaintiff fails to state a retaliation claim on the basis that she refused to "bend the rules."

Although the SAC does not identify the post-termination email that Plaintiff sent to Defendant Klein, Advanced Care Staffing's COO, as part of Plaintiff's retaliation claim (ECF No. 63 at ¶¶ 72-76), the Court acknowledges that Plaintiff is *pro se* and thus liberally construes Plaintiff's allegation that her post-termination email complaining of discrimination and harassment constitutes protected activity.  *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (finding that protected activity may include "informal protests of discriminatory employment practices, including making complaints to management").  She alleges that, as a result of her post-termination email to Defendant Klein, Advanced Care Staffing did not provide her with a final paystub and did not provide an employment verification letter.  Plaintiff also appears to allege that her termination was a retaliatory act.

First, although Plaintiff's termination on July 16, 2019 could constitute a materially adverse action, her termination occurred *before* she engaged in protected activity when she emailed Defendant Klein on July 17, 2019, to complain about the allegedly discriminatory behavior she experienced.   (ECF No. 63 at § 46.) Therefore, her termination was not causally connected to the July 17, 2019 email.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) ("Title VII does not require that a causal connection exist between a protected activity and an adverse employment action that occurred *before* that activity.").

Second, Plaintiff's allegation that Advanced Care Staffing refused to provide Plaintiff with her final paystub, is not sufficient to establish a "retaliatory action" that is "materially adverse."  *Carr*, 2023 WL 5005655, at *5.  Plaintiff does not provide a date or timeframe concerning the refusal to provide a paystub, or any specific allegations other than that she "did not receive her last pay stub which usually was sent to [her] by email."  (ECF No. 63 at ¶ 52); *Osby v. City of New York*, No. 23-CV-1731 (LTS), 2023 WL 2919127, at *3-4 (S.D.N.Y. Apr. 10, 2023) (dismissing a retaliation claim where Plaintiff alleged a single date for an allegedly adverse series of actions but no broader timeframe for when events occurred).  Plaintiff does not allege whether she still had access to her Advanced Care Staffing email during the time period that she would have received her final pay

37

stub.  Plaintiff also does not allege that she was improperly paid; indeed, she alleges that she "received her pay by direct deposit." (*Id.*); *cf. Marraccini v. Belmont*, No. 19-CV-8458 (VB), 2020 WL 5505364, at *6 (S.D.N.Y. Sept. 10, 2020) (finding an adverse employment action where plaintiff allegedly was "misled into thinking he would be compensated in accordance with his final paystub if he resigned").  "Not receiving an earnings statement in [her] preferred form does not constitute an adverse employment action that materially altered the terms and conditions of Plaintiff's employment." *Ezeh v. Wilkie*, No. 6:13-CV-6563 (EAW), 2019 WL 1428822, at *11 (W.D.N.Y. Mar. 29, 2019).

Plaintiff's allegation, however, that after her employment was terminated, Advanced Care Staffing's counsel refused to provide a letter with her "hire date, end date, and position" reaches the level of materially adverse retaliatory action. *Carr*, 2023 WL 5005655, at *5; (ECF No. 63 at ¶ 51 ("Plaintiff asked [counsel] for a letter stating her hire date, end date, and position, but [counsel] refused.").  Courts have found that an employer's refusal, post-termination, to provide a reference or a letter of recommendation can constitute an adverse action. *See, e.g., Pantchenko v. C. B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (holding that employer's alleged refusal to provide a post-termination reference could violate Title VII); *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 113 (E.D.N.Y. 2012) (finding

adverse action where plaintiff alleged that employer circulated negative references); *Abreu v. Suffolk Cnty. Police Dep't*, No. 03-CV-5927 (JFB) (WDW), 2007 WL 608331, at *12 (E.D.N.Y. Feb. 23, 2007) (refusing to write a letter of recommendation constituted adverse action).  Accordingly, Plaintiff's allegations regarding the employment verification suffice to plead an adverse action by Advanced Care Staffing after her termination.  *Klem v. Popular Ford Sales, Inc.*, 975 F. Supp. 196, 203 (E.D.N.Y. 1997) (finding plaintiff pleaded prima facie retaliation where defendant allegedly "declined to discuss her employment with another car dealership").

Further, Plaintiff has alleged sufficient facts to establish a prima facie causal connection between her post-termination email to Defendant Klein advising him of discrimination and sexual harassment and Advanced Care Staffing's refusal to provide her with the employment verification form.  Courts have found that temporal proximity between protected activity and an adverse action may provide sufficient evidence of causality where the temporal proximity is "very close," such as one month.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases finding that a three-month period is insufficient). Here, although Plaintiff did not allege a date or timeline for Advanced Care Staffing's refusal to provide an employment verification letter, the Court construes the refusal as occurring between July 17, 2019,

when Plaintiff sent the post-termination email to Klein, and August
27, 2019, when Plaintiff signed the NYSHDR complaint alleging that
she "was denied employment verification." (ECF No. 67-1, Exhibit
A at 8-10.) A period of six weeks suffices to establish prima
facie causal connection.

Accordingly, the Court denies Defendants' motion to dismiss
Plaintiff's Title VII retaliation claim based on the refusal to
provide employment verification after Plaintiff's post-termination
email complaining of discrimination and sexual harassment.

## IV. NYHRL and NYCHRL Claims

### a. Election of Remedies Doctrine

Plaintiff also asserts failure to accommodate her disability,
discrimination based on national origin, sex, and religion, and
retaliation claims under NYHRL and NYCHRL. Defendants argue that
Plaintiff's NYHRL and NYCHRL claims are barred by the election of
remedies doctrine, given that Plaintiff asserted her claims before
the NYSDHR prior to filing this action.

This Court agrees with Defendants that the election of
remedies doctrine applies in the instant action. The Second
Circuit has recognized that, under New York law, "NYHRL and
[NY]CHRL claims, once brought before the NYSDHR, may not be brought
again as a plenary action in another court." *York v. Ass'n of Bar
of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002); *see also
Malcolm v. Ass'n of Supervisors & Adm'rs of Rochester*, 831 F. App'x

1, 4 (2d Cir. 2020) (summary order) ("Under the election of remedies doctrine, a plaintiff may not bring NYSHRL claims in federal court if those claims have already been adjudicated before the NYSDHR."); *Skalafuris v. City of New York*, 444 F. App'x 466, 467 (2d Cir. 2011) (summary order) ("[NYHRL] provides an election-of-remedies limitation, which bars a person who has filed a complaint hereunder [with the NYSDHR] or with any local commission on human rights from filing a lawsuit for the same cause of action." (internal quotation marks and citation omitted)). Further, "there is no question that the election-of-remedies provisions . . . apply to federal courts as well as state." *York*, 286 F.3d at 127. Here, Plaintiff raised discrimination claims based on national origin, sex, and religion, and retaliation claims in the NYSDHR complaint she filed on August 27, 2019. (ECF No. 67-1, Exhibit A at 8-9.) As the Court found above, however, Plaintiff did not raise disability discrimination in her NYSDHR complaint.[8] Accordingly, Plaintiff's NYHRL and NYCHRL claims are dismissed as to her national origin, sex, and religion discrimination claims and retaliation claims, but not as to her claims to failure to accommodate her disability.

---

[8] Although Plaintiff's federal ADA claim is dismissed for failure to exhaust, "there is no exhaustion requirement under the [NYHRL] and the NYCHRL." C*herry v. N.Y.C. Hous. Auth.*, 564 F. Supp. 3d 140, 164 (E.D.N.Y. 2021) (citing *Ross-Caleb v. City of Rochester*, 512 F. App'x 17, 17-18 (2d Cir. 2013) (summary order)). Therefore, the Court considers Plaintiff's claims under NYHRL and NYCHRL for failure to accommodate her disability.

**b. Failure to Accommodate Claims**

To establish a prima facie case based on failure to accommodate a disability under NYHRL, a plaintiff must show that "(1) plaintiff is a person with a disability under the meaning of [the statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla v. Heilig*, No. 21-2327, 2023 WL 5313520, at *4 (2d Cir. Aug. 18, 2023); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYHRL] . . . is governed by the same legal standards as govern federal ADA claims.").

Here, even assuming Plaintiff has alleged sufficient facts regarding the other prima facie elements — disability and employer notice — the Court concludes that she failed to sufficiently allege that she could perform the essential functions of the job with reasonable accommodations.  Plaintiff alleges that she asked for three reasonable accommodations: (1) when she told Defendant Manzano that social situations were difficult for her and so she did not want to say "hi" to employees of another company on the same floor; (2) she asked to be "moved to an empty desk that was not in a high-traffic area" because people "stopped to chat with [her] frequently" even though those people "were not vital to her

42

position"; and (3) she asked to leave a meeting where Defendants Lawal and Labro "took turns yelling" at her.  (ECF No. 63 at ¶¶ 23, 25, 39.)   None of these allegations indicate that any of Plaintiff's requests relate to "essential functions" of her role as HR Partner; indeed, Plaintiff specifically alleges that her interactions with other people "were not part of [her] duties or vital to her role."  (*Id.* at ¶ 25.)  Nor does Plaintiff otherwise allege that she had trouble accomplishing her tasks or fulfilling the functions of the HR Partner position.   To the contrary, Plaintiff alleges that she was highly capable at performing her role — she alleges that Defendant Manzano "liked the amount of work Plaintiff was able to accomplish" and was "surprised by the number of files Plaintiff was able to complete while [Plaintiff's] co-worker barely had any done."  (*Id.* at ¶¶ 59-60.)  Accordingly, the Court finds that Plaintiff fails to sufficiently allege a prima facie failure to accommodate claim under NYHRL and dismisses Plaintiff's NYHRL failure to accommodate claim.

Plaintiff's claim under NYCHRL similarly fails.  The NYCHRL provides that "an employer make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the employer."  *Lazzari v. N.Y.C. Dept of Parks & Recreation*, 751 F. App'x 100, 102 (2d Cir. 2018) (summary order) (alterations, internal quotation marks, and citation omitted).  As

above, Plaintiff's factual allegations do not sufficiently establish that her accommodations requests related to "essential requisites" of her job. Accordingly, the Court dismisses Plaintiff's NYCHRL failure to accommodate claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is **DENIED**; Defendants' motion to dismiss Plaintiff's claims against Defendant Lawal for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) is **DENIED**; and Defendants' motion to dismiss Plaintiff's federal claims for failure to state a claim under Rule 12(b)(6) is **GRANTED** as to Plaintiff's Title VII claims against the individual Defendants; **GRANTED** as to Plaintiff's national origin and religious discrimination claims and failure to accommodate claims against Defendant Advanced Care Staffing under Title VII and against all Defendants under NYHRL and NYCHRL; **GRANTED** as to Plaintiff's sex discrimination and retaliation claims against all Defendants under NYHRL and NYCHRL; **DENIED** as to Plaintiff's Title VII sex-based hostile work environment claim against Defendant Advanced Care Staffing; and **DENIED** as to Plaintiff's Title VII retaliation claim against Defendant Advanced Care Staffing based on her post-termination email complaint.

The Clerk of Court is respectfully directed to terminate all defendants other than Advanced Care Staffing.  The remaining parties are directed to engage in discovery under the supervision of Magistrate Judge Lois Bloom regarding Plaintiff's Title VII retaliation and hostile work environment claims, and to engage in renewed settlement efforts.

Defendants are requested to serve a copy of this Memorandum and Order on *pro se* Plaintiff and note service on the docket by September 8, 2023.

**SO ORDERED**

Dated:      September 6, 2023
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York